# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
___

**LUIS VASQUEZ**,
       **Plaintiff,**

     v.                                                            Case No. 16-C-1322

**JOHN SCHETTLE, et al.,**
       **Defendants.**
___

## DECISION AND ORDER

Plaintiff Luis Vasquez, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. I allowed him to proceed on claims that: (1) defendant Dr. John Schettle was deliberately indifferent to his dental needs; (2) defendants Belinda Schrubbe, Barbara De Lap, Cynthia Thorpe, Lori Alsum, and Michael Thumer were deliberately indifferent to his dental needs in connection with their review of his inmate complaints; and (3) defendants Dr. Man Lee, Chrystal Marchant, Lori Alsum, and Brian Foster failed to ensure that institution dentists were complying with Department of Corrections (DOC) policies. Before me now is defendants' motion for summary judgment.

## I. BACKGROUND[1]

Plaintiff is an inmate at Waupun Correctional Institution. Dr. Schettle is a dentist at Waupun, under the supervision of Dr. Lee, the current dental director of the Bureau of Health Services (BHS). De Lap was the dental director prior to Dr. Lee. Alsum is the

---

[1] The facts are taken from "Defendants' Response to Plaintiff's Statements of Additional Facts" (Docket No. 46) and "Defendants' Reply to Plaintiff's Response to Defendants' Proposed Findings of Fact" (Docket No. 44). The facts are undisputed unless otherwise indicated.

current BHS nursing coordinator. Thorpe was the BHS nursing coordinator until 2011, when she retired. Marchant is Waupun's current Health Services Unit (HSU) manager. Schrubbe was the HSU manager until she retired in 2015. Foster is the current warden at Waupun. During the events of this complaint Thurmer was the warden.

**A. Dr. Schettle's Treatment of Plaintiff's Dental Condition**

On July 29, 2010, plaintiff submitted a dental service request (DSR) to Dr. Schettle, asking him to check plaintiff for cavities, gum loss, and fungi/bacteria. Docket No. 32-1, at 11. Plaintiff explained that he was having "chronic pain . . . , a foul taste in [his] teeth, and foul smell." *Id.* Plaintiff indicated that he would like medication for the "pain, fungi, [and] bacteria." *Id.*

Five days later, on August 3, 2010, plaintiff was seen by Dr. Schettle. Docket No. 46, ¶ 3. At the appointment, plaintiff complained about chronic pain and sensitivity to cold in his lower left tooth. *Id.* ¶ 4. Dr. Schettle informed plaintiff that there was a cavity in the tooth. *Id.* ¶ 5. Dr. Schettle decided not to address the cavity at that time. According to Dr. Schettle, plaintiff had inflamed gingival tissue that would have bled and "adversely affected the caries removal and placement of the filling." Docket No. 44, ¶ 26. Plaintiff disputes this explanation, pointing out that Dr. Schettle's records do not make note of "inflamed gingival tissue." According to plaintiff, the teeth on the *left* side of plaintiff's mouth had been cleaned at a previous appointment on June 4, 2010, and despite the cavity being on that side of plaintiff's mouth, Dr. Schettle wanted the teeth on the *right* side of plaintiff's mouth to be cleaned before he would address the cavity. *Id.* ¶ 11; Docket No. 44, ¶ 23.

On August 30, 2010, plaintiff submitted a DSR to Dr. Schettle, expressing his concerns about the periodontal disease that he feared was "further attacking [his] gums." Docket No. 32-1, at 13. Plaintiff asserted that he was brushing his teeth three times per day and flossing, but he believed he was continuing to lose gum tissue. *Id.* He stated that the conditions were "causing [him] chronic sensitivity and excruciating piercing-sharp pain." *Id.* Plaintiff asked how much longer he would have to wait for "teeth cleaning and dental surgery to restore [his] gums." *Id.* He also asked for "pain medication for the intense pain." *Id.*

Dr. Schettle responded the next day. In reference to plaintiff's request for "teeth cleaning," Dr. Schettle informed plaintiff that he "should be seen next week by the hygienist." *Id.* He also explained that plaintiff's concerns would be addressed at his next dental visit." *Id.* Dr. Schettle did not address plaintiff's request for pain medication. Docket No. 46, ¶ 26. He explains that he did not prescribe pain medication because, three weeks earlier, plaintiff had received a prescription for thirty tablets of 600 mg ibuprofen and plaintiff was being offered another pain reliever (gabapentin) four times per day. Docket No. 44, ¶ 33.

A little over a week later, on September 10, 2010, plaintiff was seen by the hygienist, and the teeth on the right side of his mouth were cleaned. *Id.* ¶ 34. Dr. Schettle did not fill the cavity in plaintiff's tooth at the appointment because he was seen only by the hygienist. Docket No. 46, ¶ 45. After this appointment, Dr. Schettle received another DSR from plaintiff, which was dated the day before plaintiff's appointment. Docket No. 44, ¶ 37. The DSR requested medication and referenced issues with ten teeth. *Id.* ¶ 37. Plaintiff explained:

> My dental condition(s) is causing severe headaches, chewing difficulties and inability to drink cold water, milk, juice, etc. My dental condition is also interfering with my daily activities and state of sleep. The ibuprofen 600 MG that the MD gave me doesn't adequately or effectively relieve the pain; the pain returns when I eat, chew, drink cold fluids, brush my teeth - gums and when I rinse my mouth. The sensitive toothpaste does not adequately soothe the nerve, nor adequately protect against sudden sharp or shock pain. The pain is unbearable. Please order for me a "strong" prescription for the pain.

Docket No. 32-1, at 14; Docket No. 46, ¶¶ 36–40.

Dr. Schettle responded, "Seen today with hygienist. Please start using dental floss on a daily basis as discussed with the hygienist." Docket No. 32-1, at 14. Dr. Schettle did not address plaintiff's complaints of pain. Docket No. 46, ¶ 50. According to Dr. Schettle, the hygienist made no entry in her notes about complaints of pain, and "the scaling/root plane procedure should have resulted in a reduction of [plaintiff's] discomfort." Docket No. 44, ¶ 38. He believed plaintiff's request for a "strong" prescription was a request for opioid medication, which he did not believe was medically necessary. Docket No. 44, ¶ 38. Despite informing plaintiff that he would attempt to restore his tooth after the hygienist cleaned his remaining teeth, Dr. Schettle did not schedule plaintiff for an appointment. Docket No. 46, ¶ 45. According to Dr. Schettle, he did not believe plaintiff's DSR was asking for an appointment. Docket No. 44, ¶ 39.

Plaintiff did not submit another DSR until July 14, 2011, more than ten months after Dr. Schettle had first proposed a plan to address the cavity in the plaintiff's tooth. The plaintiff stated in his DSR, "[W]hile eating my meal, I felt a tiny piece of tooth crunch from the cavity at tooth No. 18. When are you going to fill the cavity, I've waited long enough?" Docket No. 32-1, at 16. He also noted that he was experiencing "sharp pain,

4

throbbing pain, headaches, chewing difficulties, severe sensitivity and inability to drink cold fluids." *Id.*

Plaintiff asserts that he believed Dr. Schettle was going to schedule an appointment for him because Dr. Schettle had told him that he would attempt to restore the tooth after the hygienist finished cleaning his teeth. Docket No. 44, ¶ 42. Plaintiff asserts that Dr. Schettle never informed him that he needed to submit another DSR to complete the treatment plan that he had proposed. *Id.* Plaintiff also explains that he did not want to "bother" Dr. Schettle because he had called plaintiff annoying and had repeatedly refused to fill plaintiff's cavity or address plaintiff complaints of pain. *Id.* Dr. Schettle maintains that dental staff are not expected or required to make appointments on behalf of patients; it is the responsibility of the patient to request dental care. Docket No. 46, ¶¶ 52–55. Dr. Schettle did not address plaintiff's complaints of pain.

Dr. Schettle determined plaintiff's need should be deemed a priority, but he did not think it was urgent. Docket No. 44, ¶ 44. Plaintiff was scheduled for an appointment with Dr. Schettle four days later, on July 18, 2011. *Id.* ¶ 45. At the appointment, Dr. Schettle examined plaintiff's teeth and informed him that he had a gross cavity in tooth #18 (on his lower left side). *Id.* Dr. Schettle recommended that the tooth be extracted. *Id.* ¶ 46. He explained that restoration was no longer possible because the x-rays revealed that the decay had progressed too far. *Id.* Plaintiff asserts that he requested the cavity be filled and that Dr. Schettle offered this as an option. *Id.* Dr. Schettle denies that he offered to fill the cavity; he asserts that, as of July 18, restoration was no longer possible. *Id.* ¶ 47.

5

Dr. Schettle did not fill the cavity on July 18, 2011, because plaintiff's blood pressure was too high. *Id.* ¶ 47. Dr. Schettle told plaintiff he would need to reschedule the appointment. *Id.* He also told the HSU nurse about plaintiff's high blood pressure and asked her to check it. *Id.* ¶ 49. Plaintiff's appointment was rescheduled for July 21, 2011, but Dr. Schettle believed that plaintiff's blood pressure was still too high. *Id.* ¶ 50–51. Plaintiff asserts that he again asked Dr. Schettle to restore the tooth by filling the cavity because he was in a lot of pain and was unable to sleep, chew, eat, and drink cold fluids. *Id.* ¶ 51. Dr. Schettle referred plaintiff to the nurse to evaluate his blood pressure and blood pressure medication. *Id.* ¶ 53. Dr. Schettle did not address plaintiff's complaints of pain.

On August 30, 2011, plaintiff submitted another DSR, in which he stated that, while eating his meal, he felt another tiny piece of tooth crunch from the cavity. *Id.* ¶ 54. Plaintiff asked Dr. Schettle to fill the cavity. *Id.* Plaintiff was scheduled for an appointment on September 1, 2011. *Id.* ¶ 55. Plaintiff's blood pressure on September 1, 2011, was elevated, but Dr. Schettle believed that it was acceptable to perform the extraction, so he extracted the tooth. *Id.*

### B. Plaintiff's Inmate Complaints

Plaintiff filed three inmate complaints related to the dental care he received between July 29, 2010 and September 1, 2011. *Id.* ¶ 63. For the first complaint, complaint examiner James Muenchow (who is not a defendant) spoke to Alsum, the acting health services manager, who consulted with De Lap, the BHS Director. *Id.* ¶ 65. Based on the input of medical and dental professionals, Muenchow recommended plaintiff's complaint be dismissed. *Id.* ¶ 67. Thorpe, the regional nursing coordinator,

reviewed Muenchow's recommendation and agreed the complaint should be dismissed. *Id.* ¶ 68.

For plaintiff's second complaint, Muenchow again contacted Alsum, who again consulted with De Lap. *Id.* ¶ 70. Based on his investigation, Muenchow recommended the complaint be dismissed. *Id.* ¶ 71. Thorpe reviewed Muenchow's recommendation and agreed the complaint should be dismissed. *Id.* ¶ 72.

For plaintiff's third complaint, Muenchow contacted Schrubbe, the health services manager, who reviewed plaintiff's dental records. *Id.* ¶ 74. Based on Schrubbe's review and her assessment that plaintiff had received adequate care, Muenchow recommended plaintiff's complaint be dismissed. *Id.* ¶¶ 75–76. Becher, the reviewing authority, accepted Muenchow's recommendation and dismissed the complaint. *Id.* ¶ 77.

### C. Dental Staffing at Waupun

The DOC's guideline for dental staffing levels at an institution is based on the dental needs at each institution and available staffing and budgetary resources. *Id.* ¶ 78. Dr. Lee, the dental director, hires all new dentists and dental hygienists based on the budget set by the BHS. *Id.* ¶ 79. Dr. Lee is also responsible for supervising institution dentists and overseeing dental staff. *Id.* ¶ 81. Once per year, Dr. Lee assesses the clinical skills of each dentist, including their DSR triaging. *Id.* ¶ 82. He does this by reviewing the dental records of patients, looking at chart notes, and evaluating the dentist's response to patient inquiries. *Id.* Dr. Lee reviews the waitlists for different procedures to assess the efficiency of the triaging process and he considers inmate complaints in evaluating the provision of dental care and the adherence to policies. *Id.*

## II. DISCUSSION

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding defendants' motion, I resolve all factual disputes and make all reasonable factual inferences in favor of plaintiff, the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483–84 (7th Cir. 2008).

### A. Plaintiff's Dental Treatment

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate-indifference claim, a plaintiff must first show that he has "a medical condition 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Edwards v. Snyder*, 478 F.3d 827, 830–31(7th Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). He must then show "that the prison official[s] knew of 'a substantial risk of harm to [him] and disregarded the risk.'" *Id.* at 831 (quoting *Greeno*, 414 F.3d at 653) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Medical malpractice or a disagreement as to the proper course of medical treatment is not deliberate indifference. *Id.* (citing *Estelle*, 429 U.S. at 107; *Greeno*, 414 F.3d at 653; *Estate of Cody by Pardue v. Fromm*,

8

94 F.3d 254, 261 (7th Cir. 1996)). In order to survive summary judgment, the evidence must be such that a reasonable jury "could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Id.* (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

The parties agree that plaintiff's decayed tooth, which caused him significant pain, was a serious condition mandating treatment, so plaintiff satisfies the objective element of this standard. Thus, I will focus on whether a jury could reasonably conclude that Dr. Schettle was deliberately indifferent to plaintiff's condition, which has two components: (1) the decayed tooth and (2) the pain plaintiff experienced as a result of it. Based on the evidence before me, a reasonable jury could find that Dr. Schettle was deliberately indifferent to both.

With respect to the decayed tooth, Dr. Schettle concedes that, as of August 3, 2010, he had determined that plaintiff's lower left tooth had a cavity that needed to be filled. Rather than filling the tooth then, he decided to have a hygienist clean the *right* side of plaintiff's mouth, even though the tooth to be filled was on the *left* side of plaintiff's mouth and that side had been cleaned nearly two months earlier. Dr. Schettle states that he did not fill the tooth at that time because plaintiff had inflamed gingival tissue that would have bled. But, as plaintiff points out, this assessment is not in Dr. Schettle's records; he seems not to have offered this explanation until November 2017, more than seven years after his decision to put off filling plaintiff's cavity.

In any event, Dr. Schettle does not explain how cleaning the *right* side of plaintiff's mouth would have improved "inflamed gingival tissue" on the *left* side of plaintiff's mouth, where the decayed tooth was located, nor does he indicate why he

9

was unconcerned about delaying a procedure to remedy decay (a condition that has the potential to worsen over time) in a patient with documented poor oral hygiene. Given the low priority for cleaning, plaintiff's appointment with the hygienist did not occur for another month. Then, despite informing plaintiff that the tooth would be restored after the right side of his mouth was cleaned, Dr. Schettle still did not fill the cavity but opted instead to wait until plaintiff scheduled an appointment.

Based on the foregoing, I find that there is a genuine dispute about whether Dr. Schettle's treatment was so blatantly inappropriate as to evidence intentional mistreatment and whether his treatment decisions seriously aggravated plaintiff's condition. *Farmer,* 511 U.S. at 834; *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) ("A dentist demonstrates deliberate indifference by failing to treat the patient promptly, thus prolonging the patient's pain, while knowing that the patient may well be in serious pain that is treatable.").

As for plaintiff's pain, Dr. Schettle offers two reasons for not prescribing medication or otherwise addressing plaintiff's persistent complaints. First, he asserts that plaintiff was already taking ibuprofen and gabapentin. This argument does not necessarily justify Dr. Schettle's decision to ignore plaintiff's pain. If the medications plaintiff was then taking were sufficient to address his pain, he would not have continued to complain about being in pain. Dr. Schettle was not at liberty to continue with pain medication that, according to plaintiff, was ineffective. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Dr. Schettle next argues that he assumed plaintiff's request for "strong" relief meant plaintiff wanted opioid medication, and he did not believe opioid medication was

warranted. Dr. Schettle provides no support for his assumption that plaintiff wanted opioids. Plaintiff does not mention opioids in his request, and even if that is what plaintiff was hoping for, that does not relieve Dr. Schettle of his obligation to attempt to appropriately address plaintiff's complaints.

I find that a jury could reasonably conclude that Dr. Schettle was deliberately indifferent to plaintiff's pain in violation of his constitutional rights. As such, Dr. Schettle is not entitled to judgment, and I will deny defendants' motion with respect to plaintiff's claims against him.

### B. Plaintiff's Inmate Complaints

De Lap, Alsum, Thurmer, Schrubbe, and Thorpe are entitled to summary judgment on plaintiff's claims that they were deliberately indifferent to his dental condition in the course of reviewing his inmate complaints. In *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009), the Seventh Circuit explained,

> One can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability. Or a complaint examiner who intervened to prevent the medical unit from delivering needed care might be thought liable.

*Id.* at 595 (citations omitted). Yet, no such misconduct occurred here. To the contrary, the evidence demonstrates that these defendants investigated plaintiff's complaints and either deferred to the medical judgment of others or decided, based on the medical records available to them at the time of their review, that plaintiff had received adequate care. Plaintiff's disagreement with their conclusions is insufficient to render them liable for deliberate indifference under § 1983. Thus, I will grant defendants' motion for summary judgment on these claims.

## C. Failure to Adhere to DOC Policies

I allowed plaintiff to proceed against Dr. Lee, Marchant, Foster, and Alsum in their official capacities based on his claim that they did not ensure that Dr. Schettle was complying with DOC policies. Defendants are entitled to summary judgment on these claims. Defendants assert that Foster, Marchant, and Alsum do not hire or oversee dentists or dental staff members and that they are not responsible for ensuring provider and staff compliance with BHS dental policies. Plaintiff offers no evidence to the contrary. Because there is no vicarious or supervisory liability under § 1983, Foster, Marchant, and Alsum cannot not be held liable for failing to do someone else's job. *Burks*, 555 F.3d at 596.

Dr. Lee is responsible for the supervision of institution dentists and assists in the development and implementation of dental policies; however, plaintiff fails to articulate how the supervision practices outlined by Dr. Lee are constitutionally insufficient or even which policies Dr. Lee failed to ensure Dr. Schettle was complying with. Dr. Lee's role as Dr. Schettle's supervisor is insufficient for a finding of liability. As already explained, there is no supervisory liability under § 1983, so Dr. Lee can be held liable only for his own misconduct, not that of those he supervises. In short, plaintiff provides no evidence to support his legal conclusion that Dr. Lee violated his constitutional rights. Thus, I will grant defendants' motion for summary judgment on plaintiff's claims against Dr. Lee.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** defendants' motion for summary judgment (Docket No. 25) is **GRANTED** as to defendants Alsum, De Lap, Foster, Dr. Lee, Marchant, Schrubbe, Thorpe, and Thurmer, and **DENIED** as to defendant Dr. Schettle.

**IT IS FURTHER ORDERED** that defendants Alsum, De Lap, Foster, Dr. Lee, Marchant, Schrubbe, Thorpe, and Thurmer are **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiff shall notify the court within **21 days** of this order whether he would like the court to recruit counsel to represent him on his surviving claim against Dr. Schettle. If plaintiff does not want the court to recruit counsel to represent him, the court will set a hearing to schedule a date for trial.

Dated in Milwaukee, Wisconsin, this 21st day of April, 2018.

<u>Lynn Adelman</u>_____
LYNN ADELMAN
United States District Judge